

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33956 |
| | ) | |
| DONALD K. HARDY, | ) | **Filed:  Aug. 18, 2016** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

Honorable James K. Journey

**AFFIRMED**

Donald K. Hardy ("Defendant") appeals his conviction, following a jury trial, for possession of methamphetamine with intent to distribute.  *See* section 195.211.[1]  His sole point on appeal claims the search warrant that authorized officials to search his home and surrounding vehicles was constitutionally deficient because it did not describe the place to be searched with sufficient particularity.  Finding no merit in this claim, we affirm.

**Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to suppress to determine whether it was supported by substantial evidence.  **State v. Johnson**, 354 S.W.3d 627, 631 (Mo. banc 2011).  In doing so, we consider the evidence presented at both the suppression hearing and

---

[1] All statutory references are to RSMo Cum. Supp. 2013.

at trial. ***State v. Pike***, 162 S.W.3d 464, 472 (Mo. banc 2005). "The facts and reasonable inferences from such facts are considered favorably to the trial court's ruling, and contrary evidence and inferences are disregarded." ***Johnson***, 354 S.W.3d at 631-32. We will reverse the trial court's ruling only if it is clearly erroneous. ***State v. Sund***, 215 S.W.3d 719, 723 (Mo. banc 2007).

The Fourth Amendment to the United States Constitution provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[2] When analyzing a challenge to a warrant's description of the property to be searched, this court must determine if the property has been described with sufficient particularity to allow the officer executing the warrant to locate and identify the property with reasonable effort and if a reasonable probability exists that another property might mistakenly be searched. ***State v. Cummings***, 714 S.W.2d 877, 880 (Mo. App. S.D. 1986); *see also* ***U.S. v. Kelly***, 772 F.3d 1072, 1081 (7th Cir. 2014). A search warrant must "[i]dentify the place . . . which is to be searched, in sufficient detail and particularity that the officer executing the warrant can readily ascertain . . . what he or she is to search[.]" Section 542.276.6(5). If the place to be searched is not described with sufficient certainty, the resulting warrant will be deemed invalid. Section 542.276.10(5).

"Practical accuracy rather than technical precision governs in determining whether a search warrant adequately describes the premises to be searched." ***Cummings***, 714 S.W.2d at 880. "The requisite specificity of the description differs for rural and urban areas and

---

[2] "Article I, section 15 of the Missouri Constitution protects against unreasonable searches and seizures to the same extent as the Fourth Amendment." ***Johnson***, 354 S.W.3d at 630.

2

depends heavily on the facts of each case." ***U.S. v. Dorrough***, 927 F.2d 498, 500 (10th Cir. 1991).

"Where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity, searches pursuant to such warrants have been routinely upheld." ***Cummings***, 714 S.W.2d at 882 (quoting ***U.S. v. Gitcho***, 601 F.2d 369, 371 (8th Cir. 1979)). "A technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." ***U.S. v. Lora-Solano***, 330 F.3d 1288, 1293 (10th Cir. 2003).

### Evidentiary and Procedural Background

The resolution of this appeal requires reference to three structures located on the "left" (south) side of SE 356 Private Road ("the road") in St. Clair County. Using the order in which the structures would be reached by an officer executing the search warrant in question ("the search warrant"), we will refer to these structures as "Structure 1," "Structure 2," and "Defendant's home."

Sergeant Kip Bartlett ("Sergeant Bartlett"), a member of the Mid-Missouri Drug Task Force, had been investigating Defendant based on a tip that Defendant was selling methamphetamine. A confidential informant ("the C.I.") told Sergeant Bartlett that Defendant was selling methamphetamine with Ernest Burwell ("Burwell"). Based on that allegation, officers obtained a warrant that allowed them to place a GPS tracking device on Burwell's vehicle.

On October 1, 2013, Sergeant Bartlett monitored Burwell's vehicle through the GPS device and observed it arrive at Defendant's home. Sergeant Bartlett then stopped Burwell

3

when he left Defendant's home and found Burwell in possession of an "an eight-ball" of methamphetamine. Within two hours, Sergeant Bartlett had applied for the search warrant.

Before making that application, Sergeant Bartlett conferred with the C.I., who gave Sergeant Bartlett "driving directions" to Defendant's home, which the C.I. described as a mobile home with a white bus parked out front. Sergeant Bartlett also spoke with St. Clair County Sheriff's deputy Mike Crocker ("Deputy Crocker"). Deputy Crocker was familiar with Defendant, familiar with the general area, had been past Defendant's home several times, and had seen the white bus parked in front of Defendant's home. Sergeant Bartlett typically retrieved addresses from a county's 9-1-1 system, but that function was not available in St. Clair County.

Sergeant Bartlett then applied for and received the search warrant, which described Defendant's property as follows:

> **The property which is to be searched and the specific location thereof within St. Clair County, Missouri is as follows:** The residence is described as a mobile home. We were unable to find the legal address to the residence. This mobile home is the first house on the left side of S.E. 356 Pvt Rd. To get to the residence from the intersection of Hwy 13 and Hwy T. Drive approx. 4 miles down Hwy T to S.E. 356 Pvt Rd. The residence will be the first house on left side of the road when you turn onto S.E. 356 Pvt Rd. The residence has a white school bus parked in front of the house. This is located in St. Clair County. The search should include any vehicles, persons, and outbuilding found on the property. It should also include persons and vehicles arriving during the issuance of the search warrant.

Officers searched Defendant's home the same day the search warrant was issued, and they found methamphetamine, digital scales, and plastic baggies. Several more digital scales were found inside the white bus located in front of Defendant's home. Officers also found 17.60 grams of methamphetamine inside Defendant's truck.

Defendant filed a motion to suppress "[a]ll items found on [Defendant]'s person, and/or at or near the residence located at SE 356 Private Road, Osceola, St. Clair County,

4

Missouri[.]" Defendant claimed the search violated the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 15, of the Missouri Constitution because it described the place to be searched as the first residence, but Defendant's home was really the second residence and the third structure on the left side of SE 356 Private Road. Upon completion of the evidentiary hearing on the motion, the court overruled Defendant's motion to suppress. At trial, Defendant received a continuing objection to the introduction of any evidence seized as a result of the search warrant, and, after the jury found him guilty, Defendant preserved the claim for our review by including it in his motion for new trial. The trial court denied the motion and sentenced Defendant to 15 years' imprisonment. This appeal timely followed.

## Analysis

Defendant claims the search warrant was deficient because "it described the property to be searched as 'the first house on the left side of the road' when in reality [Defendant]'s house was the third residence on the left side of the road, and failed to otherwise adequately describe the correct property." Defendant further argues that a "very high probability" existed "that another premise [sic] might be mistakenly searched, namely the actual first house on the left side of the road." We disagree.

Even if we were to assume that Defendant's house was not the first residence on the left side of SE 356 Private Road,[3] the search warrant in this case allowed officers to locate and identify the place to be searched with reasonable effort and without a reasonable

---

[3] Defendant and the State presume that Structure 1 was a residence. But from multiple descriptions of Structure 1 as an "open shed" or a "shack[,]" the trial court could have reasonably inferred that Structure 1 was not a habitable structure (i.e. a residence or a house). Further, Defendant argued before the trial court that his home was the second residence and the third structure on the road. Here, Defendant claims his home was, instead, the third residence on the road. Defendant's new argument was not presented to the trial court and is not supported by the record.

5

probability that another property might mistakenly be searched. According to Sergeant Bartlett, Structure 1 was not visible from the road. He also testified that the first visible structure on the road was Structure 2, which he described as a "shed" that would be reached just prior to arriving at Defendant's home. Both at the time of the execution of the search warrant and while testifying at the suppression hearing, Sergeant Bartlett believed that he had searched the first mobile home on the left side of the road.[4] Sergeant Bartlett also testified that a "big white bus" was sitting on blocks in front of Defendant's home at the time of the search.

Deputy Crocker testified that he had "searched the first residence on 356[.]" He stated that Structure 1 was not visible from the road, that Structure 2 was merely a "shop," and that Defendant's mobile home came after Structure 2. Deputy Crocker further elaborated that Structure 1 did not appear to be a mobile home and was simply an "open shed," which was not visible unless a person drove past it, came to the summit of the next hill, and then turned around to view the land below. He also testified that a white bus (apparently being used for storage) was parked directly in front of Defendant's home, no other white bus was visible from the road, and he did not believe that the bus "ran."

Detective Kevin Showenfeld of the Mid-Missouri Drug Task Force helped execute the search warrant. He also testified that Structure 1 was not visible from the road, and he described Structure 2 as a "big green barn[.]"

Viewed in the light most favorable to the trial court's ruling, Structure 1 was not visible to someone traveling the route described in the search warrant, Structure 2 was neither a mobile home nor a residence of any kind, and an immobile white bus sat in front of

---

[4] Sergeant Bartlett testified that it was not until "[a]fter the prelim, the question got aroused (sic) that [Defendant's home] was not the first residence on the left."

the first (and only) mobile home on the left side of the road. Thus, viewed from the perspective of an officer executing the search warrant, that officer would have driven approximately 4 miles down Highway T from its intersection with Highway 13 in St. Clair County, reached SE 356 Private Road, turned onto that road, passed by a shed or barn, observed an immobile white bus[5] sitting in front of a mobile home, and proceeded to search Defendant's home. Such particularity allowed officers executing the search warrant to locate and identify the place to be searched with reasonable effort and without a reasonable probability that another property might mistakenly be searched.[6] *See Cummings*, 714 S.W.2d at 880.

The trial court's denial of Defendant's motion to suppress was supported by substantial evidence and was not clearly erroneous, and the trial court did not err in subsequently admitting that evidence at trial. Defendant's point is denied, and the judgment of conviction and sentence is affirmed.


DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS

---

[5] Defendant argues that "[t]he bus's mobility made it insufficient to describe the property to be searched[.]" This argument impermissibly relies on evidence contrary to the trial court's ruling. *See Johnson*, 354 S.W.3d at 631-32. Substantial evidence was presented that the bus was "up on blocks[,]" had "cobwebs in it[,]" had been turned into "a makeshift shop," and was "not drivable."

[6] The intended search location had also been under satellite surveillance by Sergeant Bartlett. Moreover, Deputy Crocker was familiar with Defendant and Defendant's home, and Deputy Crocker assisted Sergeant Bartlett in applying for and executing the search warrant. Under these circumstances, the familiarity of the officers executing the search warrant with Defendant's home served to further mitigate the potential that another residence might have mistakenly been searched. *See Cummings*, 714 S.W.2d at 882, 884; *see generally* 68 Am. Jur. 2d *Searches and Seizures* § 221 (2010).