

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86325 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | August 27, 2024 |
| JOSEPH M. ALBIN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
**The Honorable Jacqueline A. Cook, Judge**

**Before Division Two:** W. Douglas Thomson, Presiding Judge,
Karen King Mitchell and Janet Sutton, Judges

Joseph Matthew Albin appeals, following a bench trial, his conviction of first-degree forcible rape, § 566.030,[1] for which he was sentenced as both a persistent felony offender and a predatory sexual offender to life imprisonment without parole. Albin raises a single claim on appeal; he argues that the trial court plainly erred in allowing the State to introduce propensity evidence regarding Albin's prior sexual conduct against two

---

[1] All statutory references are to the Revised Statutes of Missouri, Supp. 2009, unless otherwise noted.

individuals in 1987 for which he was not convicted. Because Albin failed to demonstrate either error or resulting prejudice, we affirm.

## Background[2]

In October of 2009, Albin was living in Clinton, Missouri, with two friends. The evening of Saturday, October 3, 2009, Albin was babysitting four young neighbor children and enlisted help from Victim, who was then sixteen years old.[3] Because the children were staying the night with Albin, Victim also planned to spend the night at Albin's home. Victim slept on one end of the couch in the living room while the youngest child slept on the other end, and the other children slept on the floor in a bedroom.

Around 4:00 a.m. on Sunday, October 4, 2009, Victim awoke to Albin on top of her, forcing his penis into her vagina. The young child who had been on the couch with Victim had been moved to the floor. Albin kept Victim from screaming or escaping by holding one hand over her mouth and pinning her arms down with his other hand. When Albin finally left, Victim stayed on the couch, afraid to leave the young children. In the morning, after ensuring that the children were awake and their parents were on their way to pick them up, Victim left Albin's home.

---

[2] When reviewing a criminal matter, "[w]e accept as true all facts and inferences favorable to the verdict and disregard evidence and inferences to the contrary." *State v. Williams*, 688 S.W.3d 593, 595 n.2 (Mo. App. W.D. 2024), *reh'g and/or transfer denied* (Apr. 2, 2024), *transfer denied* (June 4, 2024).

[3] Albin was on parole at the time for four other felony offenses, and one condition of his parole was that he was not allowed to have any children under the age of 16 in his residence or to be alone with anyone under the age of 16.

Victim disclosed the rape to both her boyfriend and the school counselor. Victim experienced pain in her vaginal region during the rape and throughout the next day. A subsequent forensic examination revealed a laceration to Victim's hymen with minute bleeding, suggesting some sort of blunt force trauma. The location of the injury was consistent with penile penetration of a vagina during face-to-face contact.

During a subsequent interview with law enforcement, Albin acknowledged that Victim had been at his home in response to his request for help babysitting. Albin initially indicated that the requested help was a ruse to fool Victim's parents into allowing her to spend the night but later acknowledged that there were, in fact, young children staying at his home in violation of one of his parole conditions. Albin denied any sexual contact with Victim.

The State charged Albin with one count of forcible rape as both a persistent felony offender and a predatory sexual offender. Before trial, the State filed a motion to admit propensity evidence under Article I, § 18(c), of the Missouri Constitution. The propensity evidence consisted of prior convictions of both rape and sodomy against two female victims who were under the age of fourteen at the time of the offenses; testimony from two additional women indicating that Albin had sexually assaulted them in 1987 when they were under the age of fifteen; and testimony from the youngest child at Albin's home on the night of Victim's rape, indicating subsequent acts of sexual abuse by Albin against her eleven years later. The court held a hearing on the State's motion, but the State presented only argument without evidence. The State indicated that it intended to present the prior convictions through documents only without witness testimony. As

to the 1987 victims, the State indicated it intended to present testimony from both victims that Albin engaged in sexual contact with them while they were asleep and under the age of fifteen. The State specifically noted that Albin had been charged with offenses against both victims but the charges were later dropped as part of a plea agreement to burglary of both victims' homes. And, with respect to the subsequent acts, the State indicated its intent to call the victim as a witness to testify that Albin penetrated her while she was sleeping, just as alleged in the charged offense.

After the hearing, the trial court issued an order, wherein it indicated that it "ha[d] engaged in the balancing [test] as directed by [*State v.*] *Williams*[, 548 S.W.3d 275 (Mo. banc 2018)]." The trial court found that all of the proposed evidence was "logically relevant with respect to [Albin's] propensity to engage in sexual acts with children, under the age of eighteen years of age," and that all prior instances were similar to Victim's case insofar as "the witnesses were asleep when [Albin] either had sexual contact or sexual intercourse with them."

Regarding legal relevance, the court determined that evidence pertaining to Albin's prior convictions of rape and sodomy was more probative than prejudicial and, therefore, admissible under Article I, § 18(c). As to the 1987 victims, the court made an initial finding that the probative value was outweighed by prejudice but also noted that the court had yet to hear any evidence and was unable to determine whether the State's evidence would be sufficient to conclude that Albin actually committed the prior acts. But the court further noted, "The Court will adhere to the law[,] and if it finds that the

evidence does not meet the requirements of *Williams*, *Prince*,[4] and their pro[geny], the Court will not consider such evidence for purposes of rendering a verdict." The court precluded the State from introducing evidence from the victim of the subsequent acts as more prejudicial than probative.[5]

Albin's case was tried without a jury. At trial, both 1987 victims testified to prior sexual assaults by Albin without objection. Following trial wherein the court heard evidence from Victim, Victim's husband (who had been her boyfriend at the time), the investigating officer, a social worker who interviewed Victim, the nurse who examined Victim, and Albin's former roommates, the court found Albin guilty of first-degree forcible rape and sentenced him to life imprisonment without parole. Albin appeals.

## Standard of Review

Albin's sole claim on appeal involves the admission of propensity evidence under Article I, § 18(c), of the Missouri Constitution. Ordinarily, a "circuit court's decision to admit evidence . . . under article I, section 18(c), like all claims of evidentiary error, is reviewed for an abuse of discretion." *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018). But, when a defendant fails to object to the propensity evidence at trial, his claim is not preserved and may be reviewed, if at all, for only plain error. *State v. Minor*, 648

---

[4] *State v. Prince*, 534 S.W.3d 813 (Mo. banc 2017).

[5] In an additional finding, the court determined that evidence of Albin's prior convictions of rape and sodomy, as well as evidence pertaining to the 1987 victims, *was* more probative than prejudicial for the purpose of establishing motive, intent and common scheme. It consistently found evidence of the subsequent acts to be more prejudicial than probative.

S.W.3d 721, 729 (Mo. banc 2022). Albin concedes that he failed to object to the propensity evidence at trial and requests plain error review.[6]

"Plain error review is a two-step process." *Id*. at 731. We must determine "whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id*. (quoting *Grado v. State*, 559 S.W.3d 888, 899 (Mo. banc 2018)). "[P]lain errors are those which are evident, obvious, and clear." *Id*. (quoting *Grado*, 559 S.W.3d at 899). And we must "determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id*. (quoting *Grado*, 559 S.W.3d at 900). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative." *Id*. (quoting *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019)).

**Analysis**

Albin argues that the trial court plainly erred in admitting testimony from the 1987 victims under Article I, § 18(c), because it was "substantially more prejudicial than probative" insofar as "the State did not present the propensity evidence in a dispassionate way, the factfinder [(in this case, the trial court)] was told these allegations were never adjudicated, and the propensity evidence overshadowed the evidence of the charged

---

[6] In addition to failing to object at trial to the propensity witnesses' testimony, Albin also failed to raise a related claim of error in his motion for new trial. Though Albin was not required to file a motion for new trial, given that he was tried by the court, once he chose to do so, he needed to include this claim of error for it to be preserved. Rule 29.11(e)(2) ("If a motion for new trial is filed, allegations of error to be preserved for appellate review must be included in a motion for new trial . . . .").

crime."  But, because Albin cannot show that the trial court considered the evidence *at all*

for purposes of establishing propensity, his claim of error fails.

Under plain error review, Albin must first establish an error that is evident,

obvious, and clear.  Contrary to Albin's argument, the trial court's pretrial order indicated

that evidence involving the 1987 victims was ***inadmissible*** to establish propensity under

Article I, § 18(c), because the State had not presented evidence showing that Albin

actually engaged in the alleged conduct; thus, the court could not determine whether the

evidence had any probative value regarding Albin's *propensity* to engage in the conduct.

And, because Albin failed to object at trial or raise this claim in his motion for new trial,

the trial court gave no indication of whether it ultimately found the evidence sufficient to

establish that Albin actually engaged in the underlying conduct.  Thus, the record is silent

as to whether the court ever admitted evidence related to the 1987 victims for the purpose

of establishing Albin's *propensity*.  And Albin does not complain about the court's

determination that the evidence was admissible for the separate purpose of *establishing a*

*common scheme or plan*.[7]  Accordingly, Albin has failed to identify any error at all.

Furthermore, the court's order expressly stated that it had "engaged in the

balancing [test] as directed by *Williams*" to the best of its ability, given the absence of

evidence at the pretrial hearing, and that the court would "adhere to the law and  . . . ***not***

***consider such evidence for purposes of rendering a verdict***" if the evidence ultimately

failed to meet the requirements of *Williams*.  (Emphasis added.)  But, even assuming that

---

[7] Because Albin does not challenge the actual basis for the court's determination of admissibility, we reach no conclusions as to the correctness of that decision.

the court did determine that the evidence had probative value with respect to Albin's propensity to engage in the underlying conduct, Albin cannot establish that he was prejudiced.

Albin's entire claim is directed at the alleged prejudicial effect of the evidence.[8] But "[t]he concern that the fact-finder will give undue emphasis to particular testimony does not exist in a court-tried case," *State v. Hicks*, 448 S.W.3d 848, 850 (Mo. App. W.D. 2014), because we presume "that the trial judge was not confused or misled by any allegedly irrelevant or inadmissible evidence unless the record clearly demonstrates that the trial court considered and relied upon the inadmissible evidence." *State v. Hogue*, 501 S.W.3d 53, 58 (Mo. App. E.D. 2016).

"It is the responsibility of Defendant to prove the trial court relied on inadmissible evidence in making its determination of guilt beyond a reasonable doubt . . . ." *State v. Coaston*, 609 S.W.3d 527, 530 (Mo. App. S.D. 2020). "Absent a clear showing of reliance on allegedly inadmissible evidence for the trial court's determination of guilt, no reversible error resulted." *Id.*

With respect to its verdict, the court made the following statements:

> The Court having considered the evidence in this case finds now as follows:
> As to Cou[n]t I, sexual intercourse by forcible compulsion, the Court finds

---

[8] Albin argues that "the State did not present the propensity evidence in a dispassionate way, the factfinder was told these allegations were never adjudicated, and the propensity evidence overshadowed the evidence of the charged crime." Each of these is a factor "bear[ing] on a court's analysis of the prejudicial effect of propensity evidence." *See State v. Shepard*, 662 S.W.3d 761, 770 (Mo. App. E.D. 2023) (identifying the following as relevant factors: "whether the jury could infer the defendant was punished for his past criminal acts, how the State goes about proving the prior act at trial," and "whether the charged crime is overshadowed by evidence of the prior act").

the Defendant guilty of the crime charged. As to the issue of persistent sexual offender, the Court finds that the Defendant is in fact a persistent sexual offender as defined by Sections 558.018 and 557.036. The Court further finds that the Defendant is a predatory sexual offender pursuant to Section 558.018 and the Court finds that the Defendant is a prior offender under Section 558.016, as well as a persistent offender pursuant to 558.016 and 557.036.

Nothing in its verdict indicates that the court relied on evidence pertaining to the 1987 victims to establish Albin's propensity to engage in the underlying conduct. And Albin barely claims the contrary. At best, he makes the conclusory allegation that

> the record does demonstrate the trial court considered the inadmissible propensity evidence in Mr. Albin's case. This is because it would appear the trial court considered the unadjudicated bad acts in its determination that Mr. Albin was a persistent and predatory sexual offender. (Hr'g Tr. 48-49). This is a reliable indication that the trial court also considered the same unadjudicated bad acts as credible evidence in its finding of guilt beyond a reasonable doubt.

But the pages of transcript that he relies on relate to the *effect* of his recidivist status on the sentence he received—they do not pertain to the court's underlying determination of his recidivist status. Nor do they constitute "a clear showing of reliance on allegedly inadmissible evidence for the trial court's determination of guilt." *Coaston*, 609 S.W.3d at 530. Thus, Albin has also failed to establish a manifest injustice.

Point denied.

9

## Conclusion

Because Albin has failed to establish either a clear, evident, and obvious error or a resulting manifest injustice, he has not met his burden of establishing plain error. The trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, Janet Sutton, Judge, concur.